# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Dyllon MacDougall and Natosha Yost,<br><br>Plaintiffs,<br><br>vs.<br><br>Ford Motor Company,<br><br>Defendant. | Case No.:<br><br><br><br>COMPLAINT |

1. Dyllon MacDougall ("MacDougall") and Natosha Yost ("Yost") (collectively referred to as "Plaintiffs") bring this Complaint, by and through their attorneys, against Defendant Ford Motor Company, ("Ford" or "Defendant") and allege upon information and belief as follows:

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs' causes of action arise under federal law, i.e. Magnuson-Moss Warranty Act – 15 U.S.C. § 2303 *et seq*.

3. This Court has supplemental jurisdiction over Plaintiffs' state law claims arising under Michigan statutes and Michigan common law pursuant to 28 U.S.C. § 1367, because those claims are interrelated with Plaintiffs' federal law claims and arise from a common nucleus of operative facts such that the adjudication of Plaintiffs' state law claims with Plaintiffs' federal law claims furthers the interest of judicial economy.

1

4. The venue is proper under 28 U.S.C. § 1391 because the events giving rise to Plaintiffs' cause of action occurred in the State of Michigan and the Defendant resides in the Eastern District of Michigan.

## PARTIES

### Plaintiff Dyllon MacDougall

5. Plaintiff MacDougall is an individual resident and citizen of Michigan.

6. Plaintiff Dyllon MacDougall purchased a 2017 Ford Focus.

7. Specifically, MacDougall entered into Motor Vehicle purchase contract with Tom Holzer Ford, Inc. for the purchase of a new 2017 Ford Focus, VIN ending in 3989 (hereinafter referred to as a "Focus" or "Vehicle") with the optional "Powershift Transmission."

8. The purchase price was approximately $21,593.26.

### Plaintiff Natosha Yost

9. Plaintiff Yost is an individual resident and citizen of the State of Michigan.

10. Plaintiff Natosha Yost purchased a 2017 Ford Focus.

11. Specifically, Yost entered into a Motor Vehicle purchase contract with Avis Ford, Inc. for the purchase of a new 2017 Ford Focus, VIN ending in 3337 (hereinafter referred to as a "Focus" or "Vehicle") with the optional "Powershift Transmission."

12. The purchase price was approximately $26,200.32.

**Defendant Ford Motor Company**

13. On information and belief, Defendant Ford Motor Company is a publicly traded corporation organized under the laws of the State of Delaware.

14. On information and belief, Defendant Ford Motor Company has its principal place of business in Wayne County in the State of Michigan.

**FACTUAL ALLEGATIONS**

15. This case arises out of defects and design of a motor vehicle purchased by Plaintiffs herein.

16. According to the Detroit Free Press, in an article dated July 11, 2019, its "investigation found that Ford knowingly launched two low-priced, fuel-efficient cars with defective transmissions and continued selling the troubled Focus and Fiesta despite thousands of complaints and an avalanche of repairs."[1]

17. The Free Press stated that Ford conducted an internal study in 2012 and "Ford in 2012 acknowledged rushing the cars to production, taking shortcuts to save money and apparently compromising quality protocols[.]" *Id.*

18. The Vehicles were defective, and Plaintiffs have suffered damages for Ford's breach of warranty and misrepresentations such as, loss of money, loss of use

---

*See* https://www.freep.com/in-depth/money/cars/ford/2019/07/11/ford-focus-fiesta-transmission-defect/1671198001/

3

of the Vehicles, premature deprecation, loss of value, loss of time, aggravation and mental anguish.

19. Ford designed and marketed and represented its PowerShift Transmission as a more advanced and fuel-efficient alternative to a traditional manual or automatic transmission.

20. The PowerShift Transmission was an option that added over $1,000.00 to the purchase price of each Vehicle.

21. Ford touted that it had designed the Vehicles' computerized "automated manual" transmissions to meet heightened governmental and consumer expectations for fuel economy, performance and efficiency.

22. According to a Ford press release dated March 29, 2010, "PowerShift with dry-clutch facings and new energy-saving electromechanical actuation for clutches and gear shifts saves weight, improves efficiency, increases smoothness, adds durability and is sealed with low-friction gear lubricant for the life of the vehicle. This transmission requires no regular maintenance."[2]

23. Unfortunately, this was not the case.

24. In the owner's manual for Plaintiffs' cars, Ford stated:

**PowerShift Fuel Efficient Transmission**
Your vehicle has been designed to improve fuel economy by reducing fuel usage while coasting or decelerating. When you take your foot off

---

[2] See https://www.prnewswire.com/news-releases/powershift-transmission-production-begins-driving-ford-small-car-fuel-economy-leadership-89373007.html

4

the accelerator pedal and the vehicle begins to slow down, the torque converter clutch locks up and aggressively shuts off fuel flow to the engine while decelerating. This fuel economy benefit may be perceived as a light to medium braking sensation when removing your foot from the accelerator pedal.

25. The PowerShift Transmission, however, contains several design and/or manufacturing defects that cause, among other problems, transmission slips, bucking, kicking, jerking, harsh engagement, premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the Vehicle (Hereinafter the "Transmission Defect").

26. In addition, the Transmission Defect causes unsafe conditions, including, but not limited to, Vehicles suddenly lurching forward, delayed acceleration, and sudden loss of forward propulsion.

27. The Transmission Defect also causes premature wear to the Dual Clutch Transmission's clutch plates and other components, which results in premature transmission failure and requires expensive repairs, including transmission replacement.

28. The PowerShift Transmission contained design and/or manufacturing defects that negatively affect the drivability of the Vehicle.

29. Ford knew about and concealed the Transmission Defect present in the Vehicle, along with the attendant dangerous safety and drivability problems, from Plaintiffs and hundreds of thousands of other customers, at the time of

sale, repair and thereafter. In fact, instead of repairing the defects in the PowerShift Transmission, Ford either refused to acknowledge their existence, or performed ineffectual software upgrades that simply masked the defects.

30. Plaintiffs relied on representations contained in Ford's media advertising and printed material when they made the decision to purchase the Vehicle at issue.

31. If Plaintiffs had known about these defects at the time of sale Plaintiffs would not have purchased the Vehicles or would have paid less for them.

32. Because of their reliance on Ford's omissions and/or misrepresentations, Plaintiffs suffered a loss of money, property, and/or value of their Vehicles, including, but not limited to, out of pocket costs for the PowerShift Transmission.

33. Additionally, as a result of the Transmission Defect, Plaintiffs were harmed and suffered actual damages because the Vehicles' transmissions are substantially certain to fail before their expected useful life has run.

34. Plaintiffs' purchase of the Vehicles were accompanied by express warranties offered by Ford and extended to Plaintiffs.

35. These warranties were part of the basis of the bargain of Plaintiffs' contract for purchase of the Vehicles.

36. The basic warranties covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship.

37. All warranty repairs and adjustments, including parts and labor, were to be made at no charge.

38. Additional warranties were set forth in the warranty guides and the 2017 Ford Focus owner's manuals.

39. Plaintiffs had problems with their transmission like those mentioned above and their Vehicles have never functioned as it should except for brief periods.

40. Although the transmission was the major problem with the Vehicles, Plaintiffs have had numerous other problems with the Vehicle resulting in loss of use of the Vehicles, lost time, loss of money and aggravation. Specific example include, but are not limited to items noted below.

41. MacDougall has had issues with his Vehicle's audio system malfunctioning.

42. MacDougall has also experienced an obnoxious thumping sound while turning his Vehicle.

43. MacDougall has been extremely frustrated with his Vehicle's performance and the fact that Ford pushed him into the Vehicle despite the known defects with it.

44. MacDougall was frequently afraid he would get into an accident with his Vehicle, as his car would fail to accelerate properly as he attempted to speed up on on-ramps to highways.

45. On at least one occasion, MacDougall's Vehicle failed to properly accelerate

as he was making a left turn, leaving him frightened that oncoming traffic could strike him and causing a safety issue for drivers behind him.

46. Yost's Vehicle has the check engine light and tire pressure light on, and neither have been corrected.

47. Yost notices that the transmission skips and sputters on her Vehicle when driving it, and that issue has not been corrected either.

48. Recently, when pressing down the accelerator, Yost's Vehicle appears to accelerate faster than expected and feels somewhat uncontrolled.

49. Yost feels she has to stay vigilant and be ready to break just in case her car jumps ahead too quickly, and she accidently bumps into someone.

## COUNT ONE
### Violation of Warranty under the Magnuson-Moss Warranty Act – 15 U.S.C. § 2303 *et seq.*

50. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

51. The Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

52. Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

53. Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

54. Defendant's express warranty is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). Ford provided all purchasers and lessees of the Class Vehicles with a New Vehicle "Bumper to Bumper" Limited Warranty and a Powertrain Limited Warranty with the purchase or lease of the Class Vehicles.

55. In this Bumper to Bumper Limited Warranty, Ford expressly warranted that its dealers would "without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship" if the vehicle is properly operated and maintained and was taken to a Ford dealership for a warranty repair during the warranty period.

56. Under this "Bumper to Bumper Coverage," Ford promised to cover "all parts on [the] vehicle" "for three years – unless you drive more than 36,000 miles before three years elapse. In that case, your coverage ends at 36,000 miles."

57. Furthermore, under the Powertrain Limited Warranty, Ford expressly warranted that it would cover listed powertrain components under its Powertrain Limited Warranty, including transmission components (including the "Transmission: all internal parts, clutch cover, seals and gaskets, torque converter, transfer case (including all internal parts), transmission case,

9

transmission mounts") "for five years or 60,000 miles, whichever occurs first."

58. On information and belief, Defendant breached the express warranty by:

    58.1. Extending a 3 year/36,000 mile Bumper to Bumper Limited Warranty and 5 year/60,000 mile Powertrain Limited Warranty with the purchase or lease of the Vehicles, thereby warranting to repair or replace any part defective in material or workmanship, including the subject transmission, at no cost to the owner or lessee;

    58.2. Selling and leasing Vehicles with transmissions that were defective in material and workmanship, requiring repair or replacement within the warranty period;

    58.3. Refusing to honor the express warranty by repairing or replacing, free of charge, the transmission or any of its component parts or programming and instead charging for repair and replacement parts; and

    58.4. Purporting to repair the transmission and its component parts by replacing the defective transmission components with the same defective components and/or instituting temporary fixes, on information and belief, to ensure that the Transmission Defect

        manifests outside of the Vehicles' express warranty period.

59. Furthermore, Defendant's impliedly warranted that the Vehicles were of merchantable quality and fit for such use.

60. This implied warranty included, among other things: (i) a warranty that the Vehicles and their transmissions were manufactured, supplied, distributed, and/or sold by Ford were safe and reliable for providing transportation; and (ii) a warranty that the Vehicles and their transmissions would be fit for their intended use while the Vehicles was being operated.

61. Contrary to the applicable implied warranties, the Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs with reliable, durable, and safe transportation.

62. Instead, the Vehicles were defective, including, but not limited to, the defective design of their transmissions.

63. Defendant's breach of express and implied warranties has deprived Plaintiffs of the benefit of their bargain.

64. The amount in controversy of Plaintiffs individual claims meets or exceeds the sum or value of $25,000.

65. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims

to be determined in this suit.

66. Defendant has been afforded a reasonable opportunity to cure its breach, including when Plaintiffs brought their Vehicles in for diagnoses and repair of the transmission.

67. As a direct and proximate cause of Defendant's breach of express and implied warranties, Plaintiffs sustained damages and other losses in an amount to be determined at trial.

68. Defendant's conduct damaged Plaintiffs, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

69. Additionally, Ford breached the express warranty by performing illusory repairs.

70. Rather than repairing the Vehicles pursuant to the express warranty, Ford falsely informed Plaintiffs that there was no problem with their Vehicles, performed ineffective software updates, or replaced defective components in the PowerShift Transmissions with equally defective components, without actually repairing the Vehicle.

71. As a result of Defendant's violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiffs have incurred damages.

## COUNT TWO
### Breach of Express Warranty

72. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

73. Defendant expressly warranted that the Vehicles were of high quality and, at minimum, would actually work properly.

74. Defendant also expressly warranted that they would repair and/or replace defects in material and/or workmanship free of charge that occurred during the new Vehicle and certified preowned ("CPO") warranty periods.

75. Plaintiffs relied on Defendant's express warranties when purchasing their Vehicles.

76. Defendant breached this warranty by selling to Plaintiffs the Vehicles with known transmission defects, which are not of high quality, and which are predisposed to fail prematurely and/or fail to function properly.

77. As a result of Defendant's actions, Plaintiffs have suffered economic damages including, but not limited to, costly repairs, loss of Vehicle use, substantial loss in value and resale value of the Vehicles, and other related damage.

78. Defendant's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here.

79. Specifically, Defendant's warranty limitation is unenforceable because they

knowingly sold a defective product without informing consumers about the defect.

80. The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiffs.

81. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant.

82. A gross disparity in bargaining power existed between Defendant and Plaintiffs, and Defendant knew or should have known that the Vehicle was defective at the time of sale.

83. Plaintiffs have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

## COUNT THREE
**Breach of the Implied Warranty of Merchantability**

84. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

85. Defendant is a "merchant" as defined under the Uniform Commercial Code ("UCC").

86. The Vehicles are "goods" as defined under the UCC.

87. Defendant impliedly warranted that the Vehicles were of a merchantable quality.

88. Defendant breached the implied warranty of merchantability, as the Vehicles were not of a merchantable quality due to the Transmission Defect.

89. As a direct and proximate result of the breach of said warranties, Plaintiffs were injured, and are entitled to damages.

90. Defendant's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable.

91. Defendant's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

92. The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiffs.

93. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant.

94. A gross disparity in bargaining power existed between Defendant and Plaintiffs, and Defendant knew or should have known that the Vehicle was defective at the time of sale.

95. Plaintiffs have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

## COUNT FOUR
### Unjust Enrichment

96. Plaintiffs incorporate by reference the allegations contained in the preceding

paragraphs of this Complaint.

97. As a direct and proximate result of Defendant's failure to disclose known defects and material misrepresentations regarding known defects, Defendant has profited through the sale and lease of said Vehicles. Although the Vehicles were purchased through Defendant's agents, the money from the Vehicles sales flows directly back to Defendant.

98. Additionally, as a direct and proximate result of Defendant's failure to disclose known defects and material misrepresentations regarding known defects in the Vehicles, Plaintiffs have Vehicles that require high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Defendant.

99. Defendant has therefore been unjustly enriched due to the known defects in the Vehicles through the use of funds that earned interest or otherwise added to Defendant's profits when said money should have remained with Plaintiffs.

100. As a result of the Defendant's unjust enrichment, Plaintiffs suffered damages.

## COUNT FIVE
### Fraud in the Inducement

101. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

102. Defendant made material misrepresentations about the Powershift Transmission and the performance of the Vehicles.

103. Defendant's representations were false, as the Vehicles did not perform as promised.

104. Defendant knew the above-described representations were false and/or Defendant made such representations recklessly without knowledge of their truth.

105. Defendant made the above-described representations with the intent that Plaintiffs would act upon the representations.

106. Plaintiffs did act upon Defendant's representations, as they each purchased their respective Vehicle.

107. Plaintiffs relied upon Defendant's representations to their detriment.

108. As a result, Plaintiffs suffered damages.

109. Defendant benefited from the false representations it made about the Vehicles.

## COUNT SIX
### Innocent Misrepresentation

110. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

111. Defendant made material misrepresentations about the Powershift Transmission and the performance of the Vehicles.

112. Defendant's representations were false, as the Vehicles did not perform as promised.

113. Plaintiffs acted upon Defendant's representations, as they each purchased

their respective Vehicle.

114. Plaintiffs relied upon Defendant's representations to their detriment.

115. As a result, Plaintiffs suffered damages.

116. Defendant benefited from the false representations it made about the Vehicles.

## RELIEF REQUESTED

117. Plaintiffs request the Court to enter judgment against Defendant, as follows:

   1. An order enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to the Vehicles, and to remove and replace Plaintiffs transmissions with a suitable alternative product; enjoining Defendant from selling the Vehicles with the misleading information; compelling Defendant to provide Plaintiffs with a replacement transmission that does not contain the defects alleged herein; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged;

   2. A declaration requiring Defendant to comply with the various provisions of the consumer protection statutes herein alleged and to make all the required disclosures;

   3. An award to Plaintiffs for compensatory, exemplary, and statutory damages, including interest, and including the additional purchase

cost of the PowerShift Transmission option, in an amount to be proven at trial;

4. Any and all remedies provided pursuant to the federal consumer protection statutes herein alleged;

5. A declaration that Defendant must disgorge, for the benefit of Plaintiffs, all or part of the ill-gotten profits it received from the sale or lease of its Vehicles, or make full restitution to Plaintiffs;

6. An award of attorneys' fees and costs, as allowed by law;

7. An award of pre-judgment and post-judgment interest, as provided by law;

8. Leave to amend the Complaint to conform to the evidence produced at trial; and

9. Such other relief as may be appropriate under the circumstances.

## JURY DEMAND

118. Plaintiffs demand a trial by jury of any and all issues in this action so triable.

Dated: June 23, 2021                            Respectfully submitted,

                                             **Kazerouni Law Group, APC**

                               By: <u>/s/ Anthony P. Chester</u>
                                    Anthony P. Chester (Bar No. P77933)
                                    Kazerouni Law Group, APC
                                    120 South 6th Street, Suite 2050
                                    Minneapolis, MN 55402
                                    Phone: (952) 225-5333
                                    Email: tony@kazlg.com

                                    *Attorneys for Plaintiffs*